Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (310) 285-5330
E-mail: jpafiti@pomlaw.com

Jeremy A. Lieberman
J. Alexander Hood II
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
         jhood@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD JAZLOWIECKI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC., BRIAN P. KELLEY, and FRANCES G. RATHKE,<br><br>Defendants. | No.<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Edward Jazlowiecki ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Keurig Green Mountain, Inc., ("Keurig" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Keurig securities between February 4, 2015 and May 14, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.    Keurig Green Mountain, Inc. is a specialty coffee and coffee maker business. The Company provides Keurig single-cup brewing systems which includes Keurig single cup brewer, K-Cup portion packs used by the system, as well as related accessories. Keurig manages operations through two business segments, the specialty coffee business unit and the Keurig business unit.

3.    Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants'

projections for sales were unrealistic and unattainable given the continuing consumer confusion over the Company's Keurig 2.0 brewing system; (2) the retail distribution of Company's new cold brewing system, Keurig Kold, would be delayed; and (3) as a result, Defendants' statements about Keurig's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

4. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

6. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company maintains corporate offices in this District.

8. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff, as set forth in the attached Certification, acquired Keurig securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

10. Defendant Keurig is a Delaware corporation headquartered in Waterbury, Vermont with an office in Castroville, California. The Company's common stock is listed on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "GMCR".

11. Defendant Brian P. Kelley ("Kelley") has served as the Company's Chief Executive Officer throughout the class period.

12. Defendant Frances G. Rathke ("Rathke") has served as the Company's Chief Financial Officer throughout the class period.

13. Defendants Kelley and Rathke are sometimes collectively referred to herein as "Individual Defendants."

14. Defendants Keurig, Kelley and Rathke are referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. Keurig produces and sells specialty coffee, coffeemakers, teas, and other beverages in the United States and Canada.

16. The Company launched the Keurig 2.0 brewing system in August, 2014, which can make up to 30 ounces of coffee at once using a K-Cup that's about twice the size of its traditional coffee pods.

17. On February 4, 2015, Defendant Kelly indicated that there was confusion among consumers as to which brands of coffee the Keurig 2.0 could brew during the Company's Q1 2015 Earnings Conference Call, which impacted the Company's financial performance. Defendant Kelley stated in part:

> Quite simply our 2.0 launch got off to a slower start than we planned due to a few important factors. First our efforts to get new packs transitioned on the retail shelves and in the homes did not move quickly enough. There was also confusion among consumers as to whether the 2.0 would still brew all of their favorite brands.

4

These issues impacted consumer perception of the 2.0 and led to lower than expected brewer ratings early on. While consumer confusion has begun to subside and ratings have improved the effect weighed on brewer sales during the key holiday season.

18. Keurig Kold is the Company's new cold beverage drink system, which has yet to launch.

**Materially False and Misleading Statements**
**Issued During the Period**

19. The Class Period begins on February 4, 2015, when the Company issued a press release announcing its financial results for the fiscal first quarter of 2015. It provided the Company's outlook for the second quarter of 2015, stating in part:

> Second Quarter 2015
>
> - ***Net sales growth in the mid-single digits over the second quarter of fiscal year 2014***
> - An effective tax rate of approximately 36% to 37%
> - Non-GAAP EPS in a range of $1.00 to $1.05 which:
>   o Includes an approximate $0.08 dilutive impact of the fiscal 2014 Coca-Cola and Lavazza Equity Transactions
>   o Includes an estimated $0.07 headwind from foreign currency exchange
>   o Excludes any additional actions the Company may take to offset dilution during the quarter
>   o Excludes the amortization of identifiable intangibles related to the Company's acquisitions and legal and accounting expenses related to the Company's pending securities and stockholder derivative class action litigation and antitrust litigation

(Emphasis added).

20. On that same day, the Company held its Q1 2015 Earnings Conference Call. During the call, Defendant Kelley stated the following with regards to the launch of Keurig Kold:

> Now let me move on to one of our most important objectives for 2015 which is the introduction of Keurig [K]old to North American consumers. ***Our plans are progressing well and we're on track launch this fall.***

(Emphasis added).

5

1  21. On May 6, 2015, the Company held its Q2 2015 Earnings Conference Call. During the
2  call, Defendant Kelley stated the following with regards to the launch of Keurig Kold:

> ***Combined with our forthcoming cold system launch which is on track for the fall of 2015***, we expect to be the leading player in the growing trend to offer premium beverage systems at home.
>
> (Emphasis added).

22. The statements contained in ¶¶ 18-20 were materially false and/or misleading when made because defendants failed to disclose or indicate that: (1) Defendants' projections for sales were unrealistic and unattainable given the continuing consumer confusion over the Company's Keurig 2.0 brewing system; (2) the retail distribution of Company's new cold brewing system, Keurig Kold, would be delayed; and (3) as a result, Defendants' statements about Keurig's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

23. On May 6, 2015, the Company issued a press release aftermarket announcing its financial results for the fiscal second quarter of 2015. The press release revealed that the Company's sales growth for the quarter fell below its previously stated expectations, stating in part:

> **Keurig Green Mountain Reports Fiscal Second Quarter 2015 Results**
>
> - Non-GAAP EPS[1] of $1.03 and GAAP EPS of $0.97
> - *Net sales growth of 2%*; 3% excluding foreign currency
> - Updated fiscal year 2015 outlook includes revenue growth of flat to low-single digits, non-GAAP EPS decline of mid-single-digits and free cash flow of $120-$170 million
> - Repurchased $837 million of common shares in the quarter
> - Board of Directors declared $0.2875 quarterly dividend
>
> WATERBURY, Vt.--(BUSINESS WIRE)-- Keurig Green Mountain, Inc. (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas and other beverages with its innovative brewing technology, today announced its business results for the 13 weeks ended March 28, 2015.
>
> "We are pleased to report that our earnings per share in the second quarter were in line with our guidance. ***Our top-line growth, however, was below***

6

*our expectations primarily due to the slower than expected transition to the Keurig 2.0 system.* We are taking actions to reduce brewer inventories, enhance our 2.0 brewer packaging to better communicate our extensive brand variety and step up innovation on our owned brands," said President and CEO, Brian Kelley.

(Emphasis added).

24. On that same day, the Company held its Q2 2015 Earnings Conference Call. During the call, Defendant Kelley stated the following with regards to the Company's disappointing sales results:

With any new product introduction they are always challenges that are front end loaded and our transition to 2.0 was particularly complex. *Point of sale results were not as strong as anticipated which led to higher levels of brew inventory of retail and on our balance sheet.*

*Some of this was due to consumer confusion around pod compatibility which we've mentioned in the past.* Although we are seeing improvement as we transition more formally unlicensed brands into our manufacturing system.

(Emphasis added).

25. On that same day, *Bloomberg Business* published an article concerning the slow sales of Keurig 2.0 brewing system for the quarter. The article quotes Defendant Kelley and states in part:

*Sales volume for the company's brewers declined 22 percent last quarter, underscoring the slow adoption of the new Keurig 2.0*, which lets people brew a carafe of coffee at a time. Brewer inventory also is stacking up at retailers, Keurig said. Separately, the company named a new chief financial officer, Peter Leemputte, who will replace Fran Rathke in August.

Keurig had said in February that the Keurig 2.0 rollout was off to a slow start. Though customers were thought to be eager for a larger brewer, many were confused about what pods they could use in the new machines. Keurig's original system popularized Kcup singleserve canisters, leading a variety of brands to offer coffees and teas in the format.

*"These issues with 2.0 are a bit of a continuation of what we went through in the first quarter,"* Chief Executive Officer Brian Kelley said in an interview. *"There was consumer confusion, and while less, we still have some consumers who don't believe it brews all the brands that it does."*

7

(Emphasis added).

26. On this adverse news, shares of Keurig fell $9.92 per share or over 9% to close at $98.16 per share on May 7, 2015, damaging investors.

27. On May 14, 2015, the Company held a webcast aftermarket concerning Keurig Kold. During the webcast, Defendant Kelley revealed Keurig Kold will be sold online and in certain stores starting this fall, but won't be available in all its retail outlets until next year.

28. On this adverse news, shares of Keurig fell $8.82 per share or over 8% to close at $94.26 per share on May 15, 2015, damaging investors.

29. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Keurig securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Keurig securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records

1  maintained by Keurig or its transfer agent and may be notified of the pendency of this action by mail,

2  using the form of notice similar to that customarily used in securities class actions.

3        32.      Plaintiff's claims are typical of the claims of the members of the Class as all members of
4  the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is
5  complained of herein.

6        33.      Plaintiff will fairly and adequately protect the interests of the members of the Class and
7  has retained counsel competent and experienced in class and securities litigation. Plaintiff has no
8  interests antagonistic to or in conflict with those of the Class.

9        34.      Common questions of law and fact exist as to all members of the Class and predominate
10 over any questions solely affecting individual members of the Class.  Among the questions of law and
11 fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Keurig;

- whether the Individual Defendants caused Keurig to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Keurig securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

      35.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Keurig securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Keurig securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Keurig securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Keurig securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Keurig securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Keurig's finances and business prospects.

43. By virtue of their positions at Keurig, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with

11

reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

44. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Keurig securities from their personal portfolios.

45. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Keurig, the Individual Defendants had knowledge of the details of Keurig's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Keurig. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Keurig's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Keurig securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Keurig's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Keurig securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

47. During the Class Period, Keurig securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Keurig securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Keurig securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Keurig securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of Keurig, and conducted and participated, directly and indirectly, in the conduct of Keurig's business affairs. Because of their senior positions, they knew the adverse non-public

information about Keurig's false financial statements.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Keurig's financial condition and results of operations, and to correct promptly any public statements issued by Keurig which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Keurig disseminated in the marketplace during the Class Period concerning Keurig's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Keurig to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Keurig within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Keurig securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Keurig. By reason of their senior management positions and/or being directors of Keurig, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Keurig to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Keurig and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Keurig.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as his reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 23, 2015

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (310) 285-5330
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _Edward Jazlowiecki_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Keurig Green Mountain, Inc. ("Keurig" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Keurig securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Keurig securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Keurig securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed ___7/17/15___
(Date)

_____
(Signature)

___Ed Jazlowiecki___
(Type or Print Name)

**KEURIG GREEN MOUNTAIN, INC. (GMCR)**               **Jazlowiecki, Edward**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 03/04/2015 | PUR | 300 | $129.5798 |
| 05/07/2015 | SAL | 300 | $98.7862 |